# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **BRELAND HOMES, LLC;** | ) | |
| **SMART LIVING, LLC; CANAL** | ) | |
| **ROAD, LLC; B&W LAND** | ) | |
| **COMPANY, LLC; and OCEAN** | ) | |
| **SPRINGS DEVELOPMENT,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:18-CV-1350-CLS** |
| | ) | |
| **RANDY WRIGLEY and** | ) | |
| **RANDALL CORPORATION** | ) | |
| **OF MISSISSIPPI,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This case originally was filed in the Circuit Court of Madison County, Alabama,[1] and subsequently removed here on the basis of the parties' diversity of citizenship.  *See* 28 U.S.C. § 1332.[2]  It now is before the court on plaintiffs' motion to remand,[3] plaintiffs' amended motion to remand,[4] and defendants' motion to dismiss or, in the alternative, to transfer venue.[5]  The following opinion addresses the motions

---

[1] *See* doc. no. 1-1, at ECF 2-13 (Complaint).

[2] Doc. no. 1 (Notice of Removal).

[3] Doc. no. 9.

[4] Doc. no. 19.

[5] Doc. no. 20.

to remand.

## I. STANDARDS OF REVIEW

Federal district courts are tribunals of limited jurisdiction, "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of South Alabama v. The American Tobacco Co*., 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Accordingly, an "Article III court must be sure of its own jurisdiction before getting to the merits" of any action. *Ortiz v. Fiberboard Corp*., 527 U.S. 815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998)). A removing defendant bears the burden of proving that federal jurisdiction exists. *See, e.g.*, *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001).

Removal statutes must be construed narrowly, and "all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.,* 264 F.3d 1040, 1050 (11th Cir. 2001) (citing *Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994)). Most importantly, the court must focus upon jurisdictional facts alleged *on the date the case was removed from*

*state court. See, e.g., Burns*, 31 F.3d at 1097 n.13 ("Jurisdictional facts are assessed

on the basis of plaintiff's complaint *as of the time of removal*.") (emphasis in original)

(citations omitted).

## II.  THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT

The state court action was commenced by five plaintiffs:  (1) Breland Homes,

LLC, a Delaware limited liability company with its principal place of business in

Alabama; (2) Smart Living, LLC, a Delaware limited liability company with its

principal place of business in Alabama; (3) Canal Road, LLC, a Delaware limited

liability company with its principal place of business in Alabama; and (4) *B & W*

*Land Company, LLC, a Delaware limited liability company whose sole member and*

*owner is* (5) *Ocean Springs Development, Inc., a Delaware corporation with its*

*principal place of business in Mississippi.*[6]  The defendants are:  (1) Randy Wrigley,

an individual resident of Mississippi, and (2) Randall Corporation of Mississippi, a

Mississippi Corporation with its principal place of business in Mississippi.[7]

Breland Homes, LLC, is a homebuilding and development business that not

only constructs homes, but also develops the subdivisions and residential lots on

---

[6] Doc. no. 1-1 (Complaint), at ¶¶ 1-5 (emphasis supplied).  Plaintiffs filed an amended complaint on October 1, 2018, but that pleading must be disregarded for purposes of deciding the motion to remand, because jurisdictional facts are assessed on the date of removal.  *See Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 109 n.13 (11th Cir. 1994)).

[7] Doc. no. 1-1 (Complaint), at ¶¶ 6-7.

which the homes are constructed.[8] Smart Living, LLC, and Canal Road, LLC, are two limited liability companies that Breland Homes, LLC, uses in the residential lot development side of its business.[9] Breland Homes, LLC, also uses Smart Living, LLC, to further the commercial development side of its business.[10] The complaint refers to Breland Homes, LLC, Smart Living, LLC, and Canal Road, LLC, collectively, as "the Breland Parties."

Over the course of forty years, Breland Homes, LLC, Smart Living, LLC, and Canal Road, LLC, have retained Randy Wrigley and his business, Randall Corporation, "to perform work in numerous residential and commercial development deals."[11] Sometimes, Randy Wrigley and Louis Breland, the owner of all of the entities comprising "the Breland Parties," also acquired and developed property through two jointly-owned entities, plaintiffs B & W Land Company, LLC, and Ocean Springs Development, Inc.[12] More commonly, however, when Wrigley worked with the Breland Parties, neither he nor his company had an ownership interest in the project. Instead, Randy Wrigley and/or Randall Corporation contracted with the Breland Parties "to perform project management services in furtherance of

---

[8] *Id.* at ¶ 12.

[9] *Id.*

[10] *Id.* at ¶ 13.

[11] *Id.* at ¶ 14.

[12] *Id.* at ¶ 15.

4

the Breland Parties' development activities," and in exchange for a predetermined fee.[13] Those services included clearing and maintaining land, removing and disposing of trash and debris, coordinating surveying and engineering, and obtaining government permits.[14] Wrigley and Randall Corporation typically were compensated at the rate of $2,000 for each finished lot. Sometimes a different rate was verbally negotiated, but none of the agreements between the Breland Parties and Wrigley and Randall Corporation were reduced to writing.[15]

"Over the course of the parties' business relationship, the Breland Parties paid Defendants nearly $2,000,000.00 for their services."[16]

Beginning on May 22, 2018, and on multiple occasions in the last two (2) months, Defendants have demanded that the Breland Parties pay them a total of more than $165,000.00 for development services they purportedly performed in four (4) deals. The details for each of these demands, including the name of the project, the date of the demand and the amount claimed, are set forth in subparagraphs (a) through (d) below:

(a) On May 22, 2018, Defendants demanded that the Breland Parties pay $88,500.00 for project management services purportedly performed in Phase 5 of Magnolia Springs subdivision in Harrison County, Mississippi. Defendants submitted a conclusory invoice in conjunction with this demand, which calculated the amount owed as a 25% draw against a total of $2,000.00 per finished lot multiplied by 177

---

[13] Doc. no. 1-1 (Complaint), at ¶ 16.

[14] *Id.* at ¶ 17.

[15] *Id.* at ¶¶ 18-19.

[16] *Id.* at ¶ 20.

lots planned for Phase 5.

    (b)  On June 30, 2018, Defendants demanded that the Breland Parties pay $21,000.00 for project management services purportedly performed in Phase 6 of Magnolia Springs subdivision in Harrison County, Mississippi. Defendants submitted this demand via email, calculating the amount owed as $300.00 per finished lot multiplied by 70 lots planned for Phase 6.

    (c)  On June 30, 2018, Defendants demanded that the Breland Parties pay $24,000.00 for project management services purportedly performed over the course of ten (10) years on the Canal Road Commercial Tract adjacent to the Magnolia Springs subdivision in Harrison County, Mississippi. On July 12, 2018, Defendants emailed the Breland Parties a new demand in the form of an invoice for services performed on the Canal Road Commercial Tract, increasing the amount claimed to $30,000.00 without explanation. Defendants' July 12th invoice expressly acknowledges that the substantial majority of their work on the Canal Road Commercial Tract was performed more than six (6) years ago. Defendants further concede that they allowed a decade to elapse before ever submitting a claim for payment, describing this July 12th invoice as their *first and final invoice* for work to date (project management) on the above referenced project."

    (d)  On July 12, 2018, Defendants demanded that the Breland Parties pay $27,000.00 for project management services purportedly performed since 2015 on the Safe Mini-Storage Property in Gulfport, Mississippi. Defendants submitted a conclusory invoice in conjunction with this demand, which did not provide any calculation or supporting documentation for the amount claimed.

Doc. no. 1-1 (Complaint), at ¶ 21 (emphasis in original). The Breland Parties have

requested defendants to provide documentation supporting the amounts claimed on

these projects, but defendants have failed to do so.[17] The Breland Parties dispute the amounts claimed by defendants, because, "[a]mong other things, some of the services performed by Defendants were not authorized, requested or agreed to by the Breland Parties."[18]

Defendants have made additional demands for unspecified sums of money purportedly owed by the Breland Parties for development services performed in connection with five other Mississippi properties, but the Breland Parties deny owing those amounts as well.[19]

Finally, plaintiffs allege that:

> 26. [Randy] Wrigley also claims an interest in a tenth property — Phases 2 and 3 of Talla point subdivision in Jackson County, Mississippi. On June 30, 2018, Wrigley demanded that the Breland Parties pay him 50 % of the profits from the impending sale of Phases 2 and 3 of Talla Point subdivision to an unrelated third-party buyer ("Buyer").

> 27. Smart Living[, LLC] (not B & W Land [Company, LLC] or [Ocean Springs Development, Inc.]) currently owns Phase 2, and neither of Defendants has any equity interest in Smart Living[, LLC]. The Breland Parties estimate that meeting Wrigley's demand would require a payment of approximately $450,000.00 of the sale proceeds to Wrigley.

Doc. no. 1-1 (Complaint), at ¶¶ 26-27 (alterations supplied).

---

[17] *Id.* at ¶ 22.

[18] *Id.* at ¶ 23 (alteration supplied).

[19] Doc. no. 1-1 (Complaint), at ¶ 24.

Plaintiffs' complaint asserts two state law claims for declaratory judgment. In the first, the Breland Parties "request the Court to enter an Order and Judgment finding that they do not owe Defendants any amount" in connection with any of the properties for which defendants claim to have performed property management services; or, if the court should find that the Breland Parties do owe defendants some amount in connection with those properties, to determine the amount owed.[20]

In the second claim, Smart Living, LLC, B & W Land Company, LLC, and its sole member and owner, Ocean Springs Development, Inc., "request the Court to enter an Order and Judgment finding that [Randy] Wrigley is not entitled to any share of the profits as a result of the sale of Talla Point Phases 2 and 3"; or, if the court should find that Wrigley is entitled to a share of the profits, to determine the amount owed.[21]

Plaintiffs' complaint also asserts a state law claim for an accounting, alleging that:

> 42. The Breland Parties have paid Defendants nearly $2,000,000.00 for project management services rendered in connection with properties owned by the Breland Parties (and other entities owned by Breland), including, without limitation, certain of the nine (9)

---

[20] *Id.* at ¶ 34.
[21] *Id.* at ¶ 40 (alteration supplied).

properties identified in paragraphs 21 through 24 above.[22]

43. Defendants demand more from the Breland Parties, maintaining that they have failed to pay Defendants all that is owed.

44. The exact amount which the Breland Parties may owe Defendants with respect to the Subject Properties, if any, is unknown to the Breland Parties and cannot be ascertained without an accounting of the financial records, expense reports, receipts, invoices and/or other documentation that Defendants contend support the amounts they claim.

45. The Breland Parties have repeatedly requested Defendants to provide an accounting as to all moneys they claim are owed by the Breland Parties, including financial records, expense reports, receipts, invoices and/or other documentation to support those claims.

46. Defendants have failed or refused, and continue to fail or refuse, to render such an accounting and provide the requested information, and the Breland Parties have no adequate remedy at law.

Doc. no. 1-1 (Complaint), at ¶¶ 42-46 (footnote supplied).

## III. DEFENDANTS' NOTICE OF REMOVAL AND PLAINTIFFS' MOTIONS TO REMAND

Defendants removed the state case here on August 23, 2018, asserting federal jurisdiction based upon satisfaction of the requirements of the diversity statute.[23] *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000,

---

[22] The "nine properties" referred to in this paragraph are the Mississippi properties for which defendants claim to have performed project management work but not received payment.

[23] Doc. no. 1 (Notice of Removal).

exclusive of interest and costs, and is between — (1) citizens of different States.").
An amended Notice of Removal was filed on September 19, 2018, asserting the same
jurisdictional grounds.[24]

It is apparent from plaintiffs' complaint that more than $75,000 is in
controversy. The jurisdictional problem is that two of the plaintiffs — B & W Land
Company, LLC, a Delaware limited liability company whose sole member and owner
is Ocean Springs Development, Inc., a Delaware corporation with its principal place
of business in Mississippi — are alleged to be Mississippi residents, as are both of
the defendants. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be
a citizen of every State and foreign state by which it has been incprporated and of the
State or foreign state where it has its principal place of business . . . .") (alteration
supplied); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d
1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state
of which a member of the company is a citizen.") (alteration supplied). Thus, it
appears from the face of the complaint that the requirements of diversity jurisdiction
have not been satisfied.

Defendants argue, however, that B & W Land Company, LLC, and Ocean
Springs Development, Inc., actually are residents of Alabama, not Mississippi.

---

[24] Doc. no. 11 (Amended Notice of Removal).

They also argue that, even if the court finds those plaintiffs to be Mississippi residents, their citizenship should be disregarded, because they were fraudulently added to the complaint in an effort to defeat diversity jurisdiction and prevent removal to federal court. *See, e.g.*, *Wilson v. Republic Iron and Steel Co.*, 257 U.S. 92, 97 (1921) (holding that a diverse defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident *defendant* having no real connection with the controversy") (emphasis supplied).

Plaintiffs contest both assertions in their original and amended motions to remand, insisting that B & W Land Company, LLC, and Ocean Springs Development, Inc., are Mississippi residents, that the claims asserted by those plaintiffs are valid, and that their presence in this case prevents this court from exercising diversity jurisdiction.

## IV. DISCUSSION

**A.    The Citizenship of B & W Land Company, LLC, and Ocean Springs Development, Inc.**

As the removing parties, defendants have the burden of demonstrating that B & W Land Company, LLC, and Ocean Springs Development, Inc., are *not* residents of Mississippi, as plaintiffs alleged in their complaint. *See*, *e.g.*, *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005) (observing that, even though "the burden to establish the existence of federal subject matter jurisdiction

rests with the party bringing the claim, a corporation's citizenship by virtue of its principal place of business need not be conclusively determined to satisfy § 1332 provided the party asserting the claim demonstrates diversity by conclusively establishing the corporation's citizenship by virtue of its State of incorporation and by demonstrating that the corporation's PPB [*principal place of business*] is not in a State which would destroy complete diversity") (alteration supplied) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 741-42 (1980) (stating that diversity jurisdiction existed where one party was "a resident of Oklahoma" and the opposing party was "a foreign corporation having its principal place of business in a State other than Oklahoma"); *Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 916 & n.3 (10th Cir. 1993); *Harris v. Black Clawson Co.*, 961 F.2d 547, 551 n.12 (5th Cir. 1992)).

Further, defendants "must support the jurisdictional facts 'by competent proof.'" *Cail v. Joe Ryan Enterprises, Inc.*, 65 F. Supp. 3d 1288, 1291 (M.D. Ala. 2014) (quoting *Hertz Corporation v. Friend*, 559 U.S. 77, 96-97 (2010)).

It is undisputed that both B & W Land Company, LLC, and Ocean Springs Development, Inc., were incorporated in Delaware. The remaining question is whether the principal place of business of Ocean Springs Development, Inc., is in a state other than Mississippi.[25]

---

[25] As previously noted, because Ocean Springs Development, Inc., is the sole member and owner of B & W Land Company, LLC, the citizenship of B & W Land Company, LLC, is derivative

The Supreme Court has held that a corporation's principal place of business is "the place where [the] officers direct, control, and coordinate the corporation's activities." *Hertz Corp.*, 559 U.S. at 92-93 (alteration supplied). That will

> normally be the place where the corporation maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Id.* at 93.

The "nerve center" is not necessarily the place where the corporation carries out most of its daily business activities, however, because the important consideration is the place in which the actual direction, control, and coordination of the corporation's activities occur, and not the level of activity in a particular place. *See id.* at 94, 96-97. Moreover, merely listing a particular location on a form as a primary business location does not make that location the corporation's "nerve center." *Id.* at 97 (rejecting the suggestion that listing a corporation's "principal executive offices" on a form filed with the Securities and Exchange Commission would be sufficient proof of the corporation's principal place of business). As the Supreme Court observed:

> Such possibilities would readily permit jurisdictional manipulation, thereby subverting a major reason for the insertion of the "principal place

---

of the citizenship of Ocean Springs Development, Inc. Therefore, if the principal place of business of Ocean Springs Development, Inc., is in a state other than Mississippi, then so is the principal place of business of B & W Land Company, LLC.

of business" language in the diversity statute. Indeed, if the record reveals attempts at manipulation — for example, that the alleged "nerve center" is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat — the courts should instead take as the "nerve center" the place of actual direction, control, and coordination, in the absence of such manipulation.

*Hertz Corp.,* 559 U.S. at 97.

Here, the corporate bylaws of Ocean Springs Development, Inc., state: "The corporation shall maintain its principal place of business in Madison County, Alabama, and may have other places of business within or without the State of Alabama as the Board of Directors may determine."[26] The "2016 Corporate Annual Report" on the Mississippi Secretary of State's website lists: (**a**) Huntsville, Alabama as the principal address of Ocean Springs Development, Inc.; (**b**) its registered agent as a company in Jackson, Mississippi; and (**c**) the corporate President as Randy Wrigley, with an address in Ocean Springs, Mississippi.[27] As the Supreme Court's opinion in *Hertz*

---

[26] Doc. no. 19-1, ECF 15 (Bylaws), at § 12.

[27] Doc. no. 22, at ECF 29 (Declaration of Dan Ruth), ¶4; doc. no. 22, at ECF 32 (2016 Corporate Annual Report). Defendants also point to a notation on the Mississippi Secretary of State's website that, as of December 6, 2017, Ocean Springs Development, Inc., had been subjected to "administrative dissolution." Doc. no. 22, at ECF 29 (Declaration of Dan Ruth), ¶ 6; doc. no. 22, at ECF 36 (showing the "administrative dissolution"). In Mississippi, "[a] corporation that has been administratively dissolved continues its corporate existence but may not carry on any business except as necessary to wind up and liquidate its business and affairs . . . and notify claimants . . . ." Miss. Code. Ann. § 79-4-14.21(c) (alteration and ellipses supplied). An administratively dissolved company also "may not maintain any action, suit or proceeding in any court of [Mississippi] until the corporation is reinstated." Miss. Code. Ann. § 79-4-14.21(f) (alteration supplied). Based upon those facts, defendants argue that "it's unlikely [Ocean Springs Development, Inc.,] has done any business in Mississippi since 2017." Doc. no. 22 (Defendants' Response to Plaintiffs' Amended Motion to Remand), at 9-10. Any facial appeal that argument might have had was removed by the

14

observed, however, those designations are not conclusive.  *Id.* at 97.  *Cf. Wylie v. Red Bull North America, Inc.*, 627 F. App'x 755, 757-58 (11th Cir. 2015).

Defendants also assert that the "main business" of Ocean Springs Development, Inc., "is as a holding company for B & W [Land Company, LLC], which is a **Delaware LLC with its principal place of business in Alabama**."[28]  That argument is circular, however, because the citizenship of a limited liability company is determined by the citizenship of its sole member:  Ocean Springs Development, Inc. Moreover, the citizenship of Ocean Springs Development, Inc., is determined by the "nerve center" of its own business operations, not that of its subsidiary.  *See Johnson v. SmithKline Beecham Corp.,* 724 F.3d 337, 352 (3d Cir. 2013).

---

reinstatement of Ocean Springs Development, Inc., with the Mississippi Secretary of State on October 26, 2018. *See* doc. no. 25-1 (Third Affidavit of Louis Breland), at ¶ 2; doc. no. 25-1, at ECF 6 (Certificate of Reinstatement).  As of that date:

> (1) The reinstatement relate[d] back to and [took] effect as of the effective date of the administrative dissolution;

> (2) Any liability incurred by the corporation, director, officer or a shareholder after the administrative dissolution and before the reinstatement [was ]determined as if the administrative dissolution had never occurred; and

> (3) The corporation [could] resume carrying on its business as if the administrative dissolution had never occurred.

Miss. Code. Ann. § 79-4-14.22(c) (alterations supplied).  Thus, the temporary administrative dissolution of Ocean Springs Development, Inc., has no legal effect upon its State of citizenship for purposes of diversity jurisdiction.

[28] Doc. no. 22 (Defendants' Response to Plaintiffs' Amended Motion to Remand), at 5 (alteration supplied) (emphasis in original).

Defendants next assert that the "nerve center" of Ocean Springs Development, Inc., actually is a *person* — *i.e,* Louis Breland, the corporate President and Chief Executive Officer — as opposed to a *place,* and that the corporate "nerve center" accordingly is wherever Breland is.[29]  There is no authority supporting defendants' contention that a nerve center can be a person as opposed to a place, and the court will not consider it.

On the other hand, to the extent that defendants are arguing that the corporate "nerve center" was situated wherever Louis Breland was located when he directed, controlled, and/or coordinated the corporation's activities, that theory is consistent with the Supreme Court's decision in *Hertz Corp, supra.*  The evidence indicates that Breland is the custodian of the corporate records of Ocean Springs Development, Inc., and the company's President and Chief Executive Officer.[30]  In those roles, Breland is in charge of managing the company's business and legal affairs, executing documents, and entering into transactions on behalf of Ocean Springs Development, Inc.[31]  Defendants are correct that those activities could reasonably be construed as indicating the nerve center of the company, but there is no evidence that Breland conducted those activities from a location other than Mississippi.  Defendants rely

---

[29] *Id.* at 5 ("Breland himself proclaims to be the never [*sic*] center.").

[30] Doc. no. 19-1, at ECF 4-5 (Affidavit of Louis Breland), ¶¶ 10, 13.

[31] *Id.* at ECF 5-6 (Affidavit of Louis Breland), at ¶ 13.

upon the fact that Breland is an Alabama resident, and that he sold his home in Mississippi in 2017, but those facts say nothing of where Breland actually was located when he conducted management activities on behalf of Ocean Springs Development, Inc. In any event, defendants have offered no evidence to overcome Louis Breland's sworn testimony that, "[f]rom 2005 *to the present*, Jackson County, Mississippi is the place where [Randy] Wrigley and I have made the majority of the decisions governing the direction, control and coordination of [the direct business activities of] Ocean Springs[ Development, Inc.]"[32]

In summary, defendants have failed to satisfy their burden of establishing that the principal place of business of Ocean Springs Development, Inc., is a state other than Mississippi.

## B.     Fraudulent Joinder

Defendants also argue that, even if Ocean Springs Development, Inc., and B & W Land Company, LLC, are citizens of Mississippi, as alleged in the complaint, their citizenship should be disregarded because they were fraudulently joined in order to

---

[32] Doc. no. 19-2, at ECF 8 (Second Affidavit of Louis Breland), ¶ 18 (alterations and emphasis supplied). The court agrees with defendants that Breland's testimony about the activities of Ocean Springs Development, Inc., in Mississippi between 2005 and 2011, and even up to 2017, are of little importance, because federal jurisdiction must be assessed on the date of removal, and the case was not removed to this court until August 23, 2018. *See Burns*, 31 F.3d at 1097 n.13; *see also* doc. no. 1 (Notice of Removal). But any deficiencies in plaintiffs' evidence do not help defendants, because defendants, not plaintiffs, are the parties who bear the burden of establishing federal jurisdiction.

defeat diversity jurisdiction. The concept of fraudulent joinder typically is discussed in the context of a plaintiff filing a frivolous or other illegitimate claim against a non-diverse *defendant. See Tedder v. F.M.C. Corp*., 590 F.2d 115, 117 (5th Cir. 1979).[33] Indeed, courts traditionally have deemed a joinder to be "fraudulent" in two situations: "The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. . . . The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998); *see also, e.g.*, *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) ("In a removal case alleging fraudulent joinder, the removing party has the burden of proving either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.") (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). The burden of proving fraudulent joinder rests with the removing party, *see Pacheco de Perez*, 139 F.3d at 1380, and the claim must be supported by clear and convincing evidence. *Stillwell v. Allstate Insurance Co.,* 663 F.3d 1329, 1332 (11th Cir. 2011).

The first question that must be answered in this case is whether the doctrine also

---

[33] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

applies to the fraudulent joinder of *plaintiffs*. Neither the Eleventh Circuit nor most of the other Circuits have addressed that question. The district courts that have addressed it reached different conclusions.

The most helpful case for plaintiffs is the 1999 decision of the Middle District of Alabama in *Johnston Industries, Inc. v. Milliken & Co.*, 45 F. Supp. 2d 1308 (M.D. Ala. 1999). The court recognized that three decisions from other district courts held that the doctrine of fraudulent joinder applied to plaintiffs, but did not find those decisions to be persuasive because they merely *assumed* the doctrine applied without engaging in any analysis. *See id.* at 1313-14 (citing *Nationalcare Corp. v. St. Paul Property & Casualty Insurance Co.*, 22 F. Supp. 2d 558 (S.D. Miss. 1998); *Nelson v. St. Paul Fire & Marine Insurance Co.*, 897 F. Supp. 328, 331-32 (S.D. Tex. 1995); *Glass Molders, Pottery, Plastics & Allied Workers International Union v. Wickes Cos.*, 707 F. Supp. 174, 181 (D. N.J. 1989)). In the absence of binding Eleventh Circuit precedent or persuasive opinions from any of the district courts within the Eleventh Circuit addressing the issue of fraudulent joinder of a plaintiff, the Middle District of Alabama declined to extend the doctrine. *Johnston Industries,* 45 F. Supp. 2d at 1313-14. That court opined that, instead of filing a Notice of Removal, the defendant should have filed a motion in the state court to dismiss the claims of the non-diverse plaintiff and, if the motion to dismiss was granted by the state court, the defendant then could

remove the case to federal court. *Id.* at 1312 n.4, and 1314.

The Southern District of Illinois reached a similar conclusion in *Reeves v. Pfizer, Inc*., 880 F. Supp. 2d 926 (S.D. Ill. 2012), stating:

> Without contrary direction from the Seventh Circuit, this Court finds that extending the doctrine of fraudulent joinder to joinder of plaintiffs would be, like fraudulent misjoinder, a massive increase to this Court's jurisdiction. Defendant's argument has not convinced the Court that the fraudulent joinder doctrine is or should be so expanded. Pfizer may very well have a viable statute of limitations defense, *but they will need to bring it before the state court.*

*Id.* at 929 (emphasis supplied).

The Northern District of Ohio followed suit in *Myers Industries, Inc. v. Young*, No. 5:13-CV-01278, 2013 WL 4431250 (N.D. Ohio Aug. 16, 2013). With no definitive guidance from the Sixth Circuit and a split among other courts that had decided the issue, the district court was left with a "legal ambiguity" that could not, in light of the narrow scope of federal jurisdiction, be resolved in favor of allowing removal. *Id.* at *3 ("Because the Court cannot conclude with complete certainty that the Sixth Circuit would hold fraudulent joinder analysis applies to plaintiffs, and '[a]ll doubts as to the propriety of removal' must be resolved 'in favor of remand,' the Court is bound to refuse to apply fraudulent joinder analysis to Plaintiff Patch.") (citation omitted) (alteration supplied). Like the Middle District of Alabama and Southern District of Illinois, the Northern District of Ohio thought that the viability of the

plaintiff's claims should have been resolved in the state court:

> "Instead of requiring federal courts to venture their best guess at whether a state-law claim is colorable, it makes much more sense to leave the decision to the state courts, who are experts on questions of state law." *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 596 (E.D. Ky. 2011); *see also Geffen v. Gen. Elec. Co.*, 575 F. Supp. 2d 865, 871 (N.D. Ohio 2008) ("Instead, the better course of action is for the state court to rule on the propriety of joinder under the state's joinder law in the first instance."). "If a claim against a non-diverse defendant is truly frivolous, surely the state court would grant a motion to dismiss the claim in relatively short order." *Murriel-Don*, 790 F. Supp.2d at 596. As noted by learned commentary, "[i]n many situations, confusion could be reduced if removing parties would challenge fraudulent joinders and misjoinders in state court, before defendants file a removal notice." 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723 (4th ed.) (quoted by *Muriel–Don*, 790 F. Supp. 2d at 596).

*Myers Industries,* 2013 WL 4431250, at *3 (alteration in original).

Other district court decisions have decided to extend the doctrine to fraudulently joined plaintiffs. However, many of those courts have merely *assumed*, without any substantive analysis, that the doctrine *should* apply to plaintiffs. *See, e.g., Agrowstar, LLC v. Branch Banking & Trust Co.*, No. 5:14-CV-379 (CAR), 2015 WL 5749456, *3 (M.D. Ga. Sept. 30, 2015); *Lothrop v. North American Air Charter, Inc.*, No. CIV.A. 13-10235-DPW, 2013 WL 3863917, at *3 (D. Mass. July 11, 2013); *Morris Forest Products, LLC v. Keystone Exterior Design, LLC,* No. CIV.A. 3:05CV564-A, 2005 WL 3455882, at *3 (M.D. Ala. Dec. 16, 2005); *Hodach v. Caremark RX, Inc.*, 374 F.

Supp. 2d 1222, 1224-25 (N.D. Ga. 2005); *Miller v. Home Depot, U.S.A., Inc.*, 199 F.

Supp. 2d 502, 508 (W.D. La. 2001); *Lerma v. Univision Communications, Inc.*, 52 F.

Supp. 2d 1011, 1014 (E.D. Wis. 1999). Like the Middle District of Alabama in

*Johnson Industries, supra*, this court finds those decisions to be unpersuasive.

Some district court decisions provide more helpful analysis. The common

thread in those decisions is that there is no logical reason to distinguish the fraudulent

joinder of defendants from the fraudulent joinder of plaintiffs. For example, the

Western District of Kentucky held that:

> There is no significant difference between fraudulent joinder of
> plaintiffs and fraudulent joinder of defendants. The primary purpose of
> fraudulent joinder is to ensure that plaintiffs do not avoid diversity
> jurisdiction by pleading illegitimate claims involving non-diverse parties.
> *See, e.g., Saginaw Housing Comm'n v. Bannum, Inc*., 576 F.3d 620, 624
> (6th Cir. 2009) ("Fraudulent joinder occurs when the non-removing party
> joins a party against whom there is no colorable cause of action."). That
> purpose is fulfilled both where the plaintiff improperly sues non-diverse
> defendants against whom it has no viable claim and where the plaintiff
> joins additional non-diverse plaintiffs who have no viable claims.

*Taco Bell Corp. v. Dairy Farmers of America, Inc*., 727 F. Supp. 2d 604, 607 (W.D.

Ky. 2010). Like the Northern District of Ohio in *Myers Industries*, *supra*, the Western

District of Kentucky is located within the Sixth Circuit, but the Kentucky court, unlike

the Ohio court, did not find the absence of Sixth Circuit case law to be dispositive.

Instead, it was persuaded by the majority of other district courts that had considered

the issue and decided to extend the fraudulent joinder doctrine to plaintiffs. *Taco Bell,* 727 F. Supp. 2d at 607. *See also Murray Energy Holdings Co. v. Bloomberg, L.P.*, No. 2:15-CV-2845, 2016 WL 3355456, at *3 (S.D. Ohio June 17, 2016) ("There would be 'no logic in prohibiting plaintiffs from defeating diversity jurisdiction by fraudulently joining nondiverse defendants, but allowing them to do so through fraudulently joining nondiverse plaintiffs.'") (quoting *Grennell v. W. S. Life Insurance, Co.*, 298 F. Supp. 2d 390, 396 (S.D. W. Va. 2004)); *Kansas State University v. Prince*, 673 F. Supp. 2d 1287, 1294 (D. Kan. 2009) (same).[34]

This court agrees that the majority of cases hold that the doctrine of fraudulent joinder applies equally to plaintiffs, as well as to defendants. Even so, most of those cases provide scant reasoning to support their decisions. Even the cases that include supportive reasoning rely primarily upon logic, essentially holding that fraudulent joinder should apply to plaintiffs because there is no reason *not* to do so. That logical appeal might otherwise be persuasive, but it cannot hold up in the face of the Eleventh Circuit's clear directive to construe removal statutes narrowly, and to resolve any doubts in favor of remand. Absent any clear directive from the Eleventh Circuit, and

---

[34] The District of Kansas also commented that extending the fraudulent joinder doctrine to plaintiffs "is particularly appropriate where the removed case is a declaratory judgment action." *Prince*, 673 F. Supp. 2d at 1294 (citing *Hodach v. Caremark RX, Inc.*, 374 F. Supp. 2d 1222, 1225-26 (N.D. Ga. 2005)). But because the court did not provide any reasoning to support that comment, and neither did the *Hodach* case upon which it relied, this court gives the comment little weight.

in light of the split among other courts that have considered the issue, the best that can be said is that the answer is unclear or, in the words of the Northern District of Ohio, there is a "legal ambiguity." *Myers Industries*, 2013 WL 4431250, at *3. Such an ambiguity must be resolved so as to not unnecessarily expand the exercise of federal jurisdiction.

Moreover, there is a pragmatic reason to apply different rules to the fraudulent joinder of defendants and the fraudulent joinder of plaintiffs. This court agrees with the courts in *Johnston Industries*, *Reeves, and Myers Industries, supra*, all of which held that questions about the viability of the state law claims asserted by plaintiffs are more appropriately resolved by the state courts. Defendants argue that B & W Land Company, LLC, and Ocean Springs Development, Inc., are not the real parties in interest, that those plaintiffs lack capacity to sue, and that they are only nominal parties.[35] There is no reason why those arguments could not have been raised by a motion to dismiss filed in the Circuit Court of Madison County, Alabama. If such a motion were granted by that court, and the claims asserted by B & W Land Company, LLC, and Ocean Springs Development, Inc., dismissed, there then would be no more question as to the diversity of citizenship between the real parties in interest, and the case could properly be removed to federal court.

---

[35] *See* doc. no. 11 (Amended Notice of Removal), at 10-14.

That option would be unavailable, however, in the context of the alleged fraudulent joinder of a *defendant*. A state court defendant who wanted to remove a case to federal court, but who was prevented from doing so by the inclusion of another, non-diverse defendant, would have no standing to move to dismiss the claims against the other defendant. Instead, its only recourse would be to go ahead with the removal and argue that the other defendant had been fraudulently joined.

## V. CONCLUSION

In summary, this court finds that the doctrine of fraudulent joinder does not apply to a fraudulently joined plaintiff. Accordingly, the court cannot disregard the citizenship of plaintiffs B & W Land Company, LLC, and Ocean Springs Development, Inc. Those plaintiffs are residents of Mississippi, the same state as both defendants, and complete diversity of citizenship is not present. Accordingly, federal jurisdiction cannot be exercised pursuant to 28 U.S.C. § 1332.

An appropriate Order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 3rd day of April, 2019.

_____
United States District Judge